UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JUSTIN HUGHES, *pro se*, | ) | CASE NO. 1:24-cv-00093 |
| | ) | |
| | ) | JUDGE DAVID A. RUIZ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY HOSPITALS, *et al.*, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Now pending before the Court is Plaintiff Justin Hughes's *pro se*[1] Complaint against Defendants, University Hospitals, Bryon Harrell, Dr. Anupam Jha, Dr. Riley Grosso, Deb Gedridge, and Irene Fries (collectively, the UH Defendants), as well as Ohio Governor Mike DeWine and LeeAnne Cornyn, Director of the Ohio Department of Mental Health & Addiction Services. (R. 1).

The causes of action in the Complaint are not clearly delineated, but the Court construes

---

[1] The UH Defendants assert that Plaintiff Justin Hughes is a licensed attorney in Ohio with Attorney Registration No. 101879, and his address with the Ohio Supreme Court is the same as the one appearing on the heading of the Complaint. (R. 5, PageID# 77). In any event, the Complaint fails to state a claim even under the more liberal interpretation afforded to *pro se* litigants.

the Complaint as raising the following against the UH Defendants:[2] (1) a Fourteenth Amendment due process claim under 42 U.S.C. § 1983; (2) a violation of Title II of the Americans with Disabilities Act (ADA) relating to Plaintiff's request for a raised toilet seat while a patient at UH Elyria Medical Center;[3] (3) intentional infliction of emotional distress; (4) medical battery; and (5) two counts for false imprisonment. (R. 1, PageID# 12, 21-25 ; ¶¶102, 181-186, 192-219). The Complaint also attaches three-pages of medical records (R. 1-3), and an affidavit from an individual named Shawna Guthrie, who reviewed some of Plaintiff's medical records and disagreed with the assessments of the medical health professionals who determined that Plaintiff posed a suicide risk resulting in an involuntary committal. (R. 1-2). Ms. Guthrie's affidavit does not indicate that she possesses any medical degree or certification beyond the assertion that she completed an online training course concerning the Columbia-Suicide Severity Rating Scale. (R. 1-2, PageID# 31-32).

The UH Defendants have moved to dismiss the Complaint (R. 5). Plaintiff has filed an Opposition to which the UH Defendants have replied. (R. 10; R. 13). For the following reasons, the Court dismisses the Complaint against the UH Defendants.

## I. Factual Allegations

Plaintiff's allegations suggest that UH Defendants did not have a good faith basis to involuntarily commit ("pink slip") Plaintiff on or about January 15, 2023. The Court need not recount the voluminous allegations in the Complaint, as the following factual allegations in the Complaint undermine his assertions that his committal was improper or unwarranted.

---

[2] Defendants DeWine and Cornyn have filed a separate Motion to Dismiss (R. 7), which shall be addressed by a separate Order.
[3] The UH Defendants assert that UH Elyria Medical Center is not a party to this action. (R. 5, PageID# 74).

On January 15, 2023, Plaintiff reported to the University Hospital emergency room (ER) in Cleveland, Ohio "to seek medical treatment *and a mental health evaluation*." (R. 1, PageID# 6, ¶31) (emphasis added). Plaintiff admits that he "had recently been prescribed an oral steroid for my neck that had caused my insomnia, and I was concerned that I might be experiencing a 'manic episode' as a side effect from the drug, so I requested a mental health exam just to be safe." *Id*. at ¶35. Plaintiff's thought content "endorse[d] suicide ideation," and he had "persistent thoughts of death" as well as "a passive death wish." (R. 1, PageID# 7, ¶45). The Complaint asserts that treatment notes indicated he lacked a "plan or intent" related to suicide. *Id*. at ¶46. His suicide risk was allegedly recorded as "moderate." *Id*. at ¶49. Medical records from that date state that "Patient is displaying bizarre behavior with some internal stimulation and endorsing suicidal ideation with a history of prior attempts." (R. 1-2, PageID# 35). The same record stated that Plaintiff "[r]epresents a substantial risk of physical harm to himself or others if allowed to remain at liberty pending examination." *Id*.

Despite the Complaint's general tenor that indicates Plaintiff should never have been hospitalized as a suicide risk, the Complaint acknowledges that, soon after Plaintiff was hospitalized at the UH Elyria Medical Center, he wanted to kill himself. (R. 1, PageID# 11, ¶90). The Complaint acknowledges that the very next day, Plaintiff had concocted an alarmingly imaginative and detailed plan to take his own life:

> I was provided a bag of toiletries that contained a roll-on deodorant and plastic toothbrush. I thought to myself that I could take that deodorant, place the can on the floor, and step on it to remove the applicator ball. Then, I could increase its size by tying a knot around the ball with a ripped sock. **I figure I could then use my toothbrush to lodge the object deep into my throat to stop my breathing and end my suffering**.

(R. 1, PageID# 11, n. 5) (emphasis added).

3

**II. Federal Rule of Civil Procedure 12(b)(6) Standard**

When ruling upon a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), a court must accept as true all the factual allegations contained in the complaint. *See Erickson v. Pardus*, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *accord Streater v. Cox*, 336 Fed. App'x 470, 474 (6th Cir. 2009). Nonetheless, a court need not accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.] Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).

**III. Analysis**

A. **Federal ADA and § 1983 Claims**

The UH Defendants assert that Plaintiff's due process claim asserted under § 1983 and ADA claim both fail, as a matter of law, because UH is a private hospital and its employees are

private actors—as opposed to state employees. (R. 5, PageID# 80).

To establish a cause of action under § 1983, a Plaintiff must plead facts supporting two elements: "(1) deprivation of a right secured by the Constitution of laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (*citing McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). "As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments….'" *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936 (1982) ("Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.") (*citing Flagg Brothers Inc. v. Brooks*, 436 U.S. 149, 156 (1978)).

Plaintiff contends that he was taken into custody, transported to a psychiatric hospital, and held against his will between January 15, 2023 and January 18, 2023, by named individual UH Defendants who, he alleges, were acting under the color of an Ohio law, specifically Ohio Revised Code (O.R.C.) § 5122.10(A)(l).[4] (R. 10, PageID# 109-115). Plaintiff cites no authority

---

[4] O.R.C. § 5122.10(A)(1) states as follows:

   Any of the following who has reason to believe that a person is a person with a mental illness subject to court order and represents a substantial risk of physical harm to self or others if allowed to remain at liberty pending examination may take the person into custody and may immediately transport the person to a hospital or, notwithstanding section 5119.33 of the Revised Code, to a general hospital not licensed by the department of mental health and addiction services where the person may be held for the period prescribed in this section:

   (a) A psychiatrist;
   (b) A licensed physician;
   (c) A licensed clinical psychologist;
   (d) A clinical nurse specialist who is certified as a psychiatric-mental health CNS by the

suggesting that an individual involuntarily committed by a private medical health professional satisfies the state action or state actor requirements.

While Plaintiff has arguably sufficiently pleaded a deprivation of a right secured by the Constitution (a civil commitment that deprived him of his liberty), the Complaint fails with respect to the second element of a § 1983 claim. As stated above, a complaint must contain allegations from which the Court could conclude that a defendant's actions could be considered the actions of the State for purposes of § 1983 liability.

The conduct of the UH Defendants—private entities and individuals—may only be considered state action "if, [and] only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 295 (2001). The issue of "whether a private physician's decision to admit a patient pursuant to a state involuntary commitment statute implicates state action" was first addressed by the Sixth Circuit Court of Appeals in *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995) (noting the issue was "one of first impression for this circuit" but that "a majority of courts hold that involuntary commitment by private physicians pursuant to a state statute does not result in state action"). The Court of Appeals has noted the presence of three tests for determining whether the "color of state law" element is satisfied: (1) the public function test; (2) the state compulsion test; and (3) the nexus

---

American nurses credentialing center;
(e) A certified nurse practitioner who is certified as a psychiatric-mental health NP by the American nurses credentialing center;
(f) A health officer;
(g) A parole officer;
(h) A police officer;
(i) A sheriff.

test. *See Ellison v. Univ. Hosp. Mobile Crisis Team*, 108 Fed. App'x 224, 226-227 (6th Cir. 2004) (*citing Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)). The Sixth Circuit has described these tests as follows:

> The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state. The typical examples are running elections or eminent domain. The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. Finally, the nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state.

*Ellison*, 48 F.3d at 195 (internal quotation marks and citations omitted).

The District Court for Southern Ohio has addressed a similar allegation by a plaintiff against a private medical provider who had involuntarily committed her under the authority vested by Ohio statute. That court stated:

> Plaintiff, Michelle Mathis, who is proceeding without the assistance of counsel, brings this action against Doctor's Hospital (West) and Riverside Methodist Hospital (collectively "Defendants"), asserting federal civil rights and state-law tort claims arising out her involuntary commitment and treatment.
>
> ***
>
> In *Ellison v. Garbarino*, the Sixth Circuit concluded that a private physician's decision to admit a patient pursuant to Tennessee's involuntary commitment statute did not implicate state action. *Id*. In reaching this conclusion, the Court reasoned that the state statute did not compel or encourage private individuals to pursue involuntary commitment and that the plaintiff had made no attempt to establish a sufficient "nexus" between defendants and the state. *Id*. at 196. The Court declined to address the state function test because the plaintiff had not offered any historical analysis, explaining that "[c]ourts that have addressed this issue have typically required some historical analysis to determine whether an action is one traditionally the exclusive prerogative of the state." *Id*. (citation omitted).
>
> In *Ellison v. University Hospital Mobile Crisis Team*, the Sixth Circuit similarly concluded that a hospital's mobile crisis team, which had attempted involuntary commitment of the plaintiff on an emergency basis, had not acted under the color

7

of state law. 108 F. App'x at 226-27. The Court rejected the plaintiff's offering of historical analysis in an attempt to satisfy the state function test. *Id*. The Court explained that "private actors have had authority to commit people involuntarily for around two hundred years. Given that this authority would predate the 1871 precursors of 42 U.S.C. § 1983 . . . as the law currently stands, traditional authority for involuntary commitment is not exclusive to the state in Ohio." *Id*. The Court likewise concluded that the plaintiff had not offered sufficient evidence to satisfy the other two tests. *Id*.

Applying the foregoing authority, the undersigned concludes that Plaintiff has failed to allege facts upon which this Court could conclude that Defendants acted under the color of state law. First, Plaintiff does not allege that Ohio's statutes compel or encourage private individuals to pursue involuntary commitment. Likewise, Plaintiff alleges no facts showing that the state had a sufficiently close relationship with Defendants such that their private conduct could be fairly attributed to the state for purposes of § 1983 liability. Finally, in light of *Ellison*, Plaintiff cannot demonstrate state action with regards to her involuntary commitment via the public function test. *See Ellison*, 108 F. App'x at 226-27.

*Mathis v. Doctor's Hosp. (West)*, No. 2:12-cv-156, 2012 U.S. Dist. LEXIS 39777, at *9, 2012 WL 995761 (S.D. Ohio Mar. 22, 2012), *adopted by* 2012 WL 1309283 (S.D. Ohio Apr. 16, 2012).

The Court agrees with the *Mathis* court's application of the Sixth Circuit's guiding precedents, as well as its conclusion that a private medical provider or institution's involuntary commitment of an individual pursuant to state law, without more, does not constitute state action for § 1983 purposes.[5]

---

[5] Although Plaintiff has not asserted that any of the UH Defendants are state actors by virtue of their funding, "[i]t is well-established…that private hospitals, even those receiving federal and state funding and tax-exempt status, are not state actors under § 1983." *Grant v. Trinity Health-Michigan*, 390 F. Supp. 2d 643, 657 (E.D. Mich. 2005) (*citing Crowder v. Conlan*, 740 F.2d 447, 449–453 (6th Cir. 1984) (private hospital not a state actor for purposes of § 1983 despite fact that it derived revenue from government sources, was heavily regulated, had public officials on its board of directors, and was purchased by the county and leased back to the board of trustees); *Jackson v. Norton–Children's Hospitals, Inc.*, 487 F.2d 502, 503 (6th Cir. 1973), *cert. denied*, 416 U.S. 1000, 94 S.Ct. 2413, 40 L.Ed.2d 776 (1974) (private hospital not a state actor even though it received Hill–Burton funds and was heavily regulated); *Sarin v. Samaritan Health Ctr.*, 813 F.2d 755, 759 (6th Cir. 1987) (holding that plaintiff failed to state a claim under § 1983

8

With respect to the ADA claim, the exact contours of Plaintiff's claim are unclear. Plaintiff contends that he requested a raised toilet seat because the toilet in his room was exceptionally low, but was not provided one. (R. 1, PageID# 21). "The ADA prohibits public entities from discriminating against individuals with disabilities." *Anderson v. City of Blue Ash*, 798 F.3d 338, 353 (6th Cir. 2015). The UH Defendants argue that a cause of action under Title II can only be asserted against "public entities," which by statutory definition is limited to "any State and local governments," and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." (R. 5, PageID# 80, citing 42 U.S.C. § 12131). Plaintiff's opposition brief is largely unresponsive to the argument that none of the UH Defendants constitute a public entity as defined by the ADA or work for a public entity.

Several district courts in this Circuit have also found that ADA actions against private institutions, such as hospitals, are not actionable. *See, e.g., Park v. KIMC Nashville, LLC*, 2009 WL 3834701, at *3 (M.D. Tenn. Nov. 16, 2009) ("As a private educational institution, MedVance Institute is not subject to Title II of the ADA) (*citing Green v. City of New York*, 465 F.3d 65, 78–79 (2d Cir. 2006) (private hospital is not a "public entity" subject to Title II of the ADA, despite its contract with a municipality to provide services)). Another district court decision has explained that "[a]lthough the Sixth Circuit has not considered whether a private contractor can be a 'public entity' under Title II of the ADA, the Circuit courts that have spoken have held that a private contractor is not a 'public entity' under the ADA." *Miracle v. Smith*, 2016 WL 5867825, at *3 (W.D. Ky. Oct. 6, 2016) (*citing Phillips v. Tiona*, 508 Fed. Appx. 737, 748 (10th Cir. 2013) (unpublished) (holding that the ADA does not apply to private prisons);

---

because state regulation of hospital and receipt of Medicare and Medicaid funds do not establish state action)).

9

*Green v. City of N.Y.*, 465 F.3d 65, 78-80 (2d Cir. 2006) (holding that a private hospital contracting with the City is not a public entity)). The *Miracle* decision explained that "the courts determined that the term instrumentality of a State in Title II is best read as referring to a creature of a state or municipality. Thus, even where a private entity contracts with the state to perform a traditional and essential government function, it remains a private company, not a public entity." 2016 WL 5867825 at *3 (internal quotation marks and citations omitted).

The Court agrees with the above authority and finds that Plaintiff has failed to state an ADA claim against the UH Defendants.

**B.  State Claims**

Plaintiff's remaining claims against the UH Defendants—intentional infliction of emotional distress, medical battery, and false imprisonment—all arise under state law. Defendants argue that they are entitled to statutory immunity against such claims. (R. 5, PageID# 82-83). Alternatively, the UH Defendants assert that the Court should exercise its discretion to dismiss Plaintiff's supplemental state law claims.

Federal law states that "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) [28 U.S.C. section 1367] if...(3) the district court has dismissed all claims over which it has original jurisdiction...." 28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed, the district court enjoys wide discretion in determining whether to retain jurisdiction over the remaining state law claims." *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 947 (5th Cir. 1995), *cert. denied* 515 U.S. 1122, 115 S. Ct. 2276, 132 L. Ed. 2d 280 (1995). "After a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996), *amended on denial of reh'g*, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998).

The Court hereby exercises its discretion to dismiss Plaintiff's remaining state law claims.

## IV. Conclusion

For the foregoing reasons, the UH Defendants' motion to dismiss (R. 5) is hereby GRANTED.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: February 6, 2025