UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JUSTIN HUGHES, *pro se*, | ) | CASE NO. 1:24-cv-00093 |
| | ) | |
| | ) | JUDGE DAVID A. RUIZ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY HOSPITALS, *et al.*, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Now pending is Plaintiff Justin Hughes's *pro se* Complaint against Defendants, University Hospitals, Bryon Harrell, Dr. Anupam Jha, Dr. Riley Grosso, Deb Gedridge, and Irene Fries (collectively, the UH Defendants), as well as against Ohio Governor Mike DeWine and LeeAnne Cornyn, Director of the Ohio Department of Mental Health & Addiction Services (Ohio Defendants) in their official capacities. (R. 1). The Ohio Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (R. 7). Plaintiff has filed an Opposition to which the Ohio Defendants have replied. (R. 11; R. 12).

The causes of action in the Complaint are not clearly delineated, but the Court construes the Complaint as raising the following against the Ohio Defendants:[1] (1) a Fourteenth Amendment due process claim under 42 U.S.C. § 1983; and (2) an equal protection claim. (R. 1, PageID# 12, 25-26; ¶¶102, 220-228). The Complaint also attaches three-pages of medical records (R. 1-3), and an affidavit from an individual named Shawna Guthrie, who reviewed some

---

[1] The UH Defendants have filed a separate Motion to Dismiss (R. 5), which is addressed by a separate Order.

of Plaintiff's medical records and disagreed with the assessments of the medical health professionals who determined that Plaintiff posed a suicide risk resulting in an involuntary committal. (R. 1-2). Ms. Guthrie's affidavit does not indicate that she possesses any medical degree or certification beyond the assertion that she completed an online training course concerning the Columbia-Suicide Severity Rating Scale. (R. 1-2, PageID# 31-32).

For the following reasons, the Court grants the Ohio Defendants' Motion to Dismiss.

## I. Factual Allegations

Plaintiff's allegations suggest that UH Defendants did not have a good faith basis to involuntarily commit ("pink slip") Plaintiff on or about January 15, 2023, pursuant to Ohio Revised Code (O.R.C.) § 5122.02, *et seq*. The Court need not recount the voluminous allegations in the Complaint, as the following factual allegations in the Complaint undermine his assertions that his committal was improper or unwarranted.

On January 15, 2023, Plaintiff reported to a University Hospital emergency room (ER) in Cleveland, Ohio "to seek medical treatment *and a mental health evaluation*." (R. 1, PageID# 6, ¶31) (emphasis added). Plaintiff admits that he "had recently been prescribed an oral steroid for my neck that had caused my insomnia, and I was concerned that I might be experiencing a 'manic episode' as a side effect from the drug, so I requested a mental health exam just to be safe." *Id*. at ¶35. Plaintiff's thought content "endorse[d] suicide ideation," and he had "persistent thoughts of death" as well as "a passive death wish." (R. 1, PageID# 7, ¶45). The Complaint asserts that treatment notes indicated he lacked a "plan or intent" related to suicide. *Id*. at ¶46. His suicide risk was allegedly recorded as "moderate." *Id*. at ¶49. Medical records from that date state that "Patient is displaying bizarre behavior with some internal stimulation and endorsing suicidal ideation with a history of prior attempts." (R. 1-2, PageID# 35). The same record stated

that Plaintiff "[r]epresents a substantial risk of physical harm to himself or others if allowed to remain at liberty pending examination." *Id*.

Despite the Complaint's general tenor that indicates Plaintiff should never have been hospitalized as a suicide risk, the Complaint acknowledges that, soon after Plaintiff was hospitalized at the UH Elyria Medical Center, he wanted to kill himself. (R. 1, PageID# 11, ¶90). The Complaint acknowledges that the very next day, Plaintiff had concocted an alarmingly imaginative and detailed plan to take his own life:

> I was provided a bag of toiletries that contained a roll-on deodorant and plastic toothbrush. I thought to myself that I could take that deodorant, place the can on the floor, and step on it to remove the applicator ball. Then, I could increase its size by tying a knot around the ball with a ripped sock. **I figure I could then use my toothbrush to lodge the object deep into my throat to stop my breathing and end my suffering**.

(R. 1, PageID# 11, n. 5) (emphasis added).

## II. Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) Standards

A Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a Court's subject matter jurisdiction. Federal courts are courts of limited jurisdiction, and, unlike state trial courts, they do not have general jurisdiction to review all questions of law. *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008). Rule 12(b)(1) motions may challenge jurisdiction facially or factually. Fed. R. Civ. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In a facial attack, the challenger asserts that the allegations contained in the Complaint are insufficient on their face to invoke federal jurisdiction. *See In re Title Ins. Antitrust Cases*, 702 F.Supp.2d 840, 884-85 (N.D. Ohio 2010) (*citing Ohio Hosp. Ass'n v. Shalala,* 978 F.Supp. 735, 739 (N.D. Ohio. 1997)). By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal

jurisdiction. *Id*.

When ruling upon a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), a court must accept as true all the factual allegations contained in the complaint. *See Erickson v. Pardus*, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *accord Streater v. Cox*, 336 Fed. App'x 470, 474 (6th Cir. 2009). Nonetheless, a court need not accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.] Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*., at 557, 127 S.Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).

### III. Analysis

A. **Sovereign Immunity**

The Ohio Defendants argue that Plaintiff's claims are barred by the Eleventh Amendment to the United States Constitution, which states: "The Judicial power of the United States shall not

be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend XI. (R. 7, PageID# 93). The Supreme Court's cases "have extended the [Eleventh] Amendment's applicability to suits by citizens against their own States." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363, 121 S. Ct. 955, 962, 148 L. Ed. 2d 866 (2001) (citations omitted).

The United States Supreme Court has unambiguously held that neither States nor state officials acting in their official capacities are "persons" within meaning of § 1983, explaining as follows:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, *Welch v. Texas Dept. of Highways and Public Transportation*, 483 U.S. 468, 472–473, 107 S.Ct. 2941, 2945–2946, 97 L.Ed.2d 389 (1987) (plurality opinion), or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity. That Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal–state balance in that respect was made clear in our decision in *Quern*. Given that a principal purpose behind the enactment of § 1983 was to provide a federal forum for civil rights claims, and that Congress did not provide such a federal forum for civil rights claims against States, we cannot accept petitioner's argument that Congress intended nevertheless to create a cause of action against States to be brought in state courts, which are precisely the courts Congress sought to allow civil rights claimants to avoid through § 1983.

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 58, 109 S. Ct. 2304, 2305 (1989); *accord Johnson v. Ohio*, 2005 WL 3113061, at *2 (S.D. Ohio Nov. 21, 2005) (noting that the State of Ohio has neither constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts and plaintiff, therefore, cannot seek monetary relief from the State of Ohio in a §1983 action) (*citing Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir.), *cert. denied*, 474

U.S. 824, 106 S.Ct. 79, 88 L.Ed.2d 65 (1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449 (6th Cir. 1982)).

Plaintiff argues that the Eleventh Amendment's sovereign immunity is inapplicable where a citizen seeks *prospective* relief against a state official to end a *continuing violation* of federal law. (R. 11, PageID# 128, *citing Ex parte Young*, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908) (emphasis added)). The Supreme Court has declined to extend the *Young* doctrine to encompass retroactive relief, as "to do so would effectively eliminate the States' constitutional immunity." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 89-90 (1984).[2]

In *Ex parte Young*, the Supreme Court established an exception to the Eleventh Amendment immunity for claims for injunctive relief against individual state officials in their official capacities. 209 U.S. 123, 150-57 (1908). "In order to qualify under *Ex parte Young*, such an action must seek prospective relief to end a continuing violation of federal law." *Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. 2002) (*citing MacDonald v. Vill. of Northport, Mich.*, 164 F.3d 964, 970-72 (6th Cir. 1999).

The Court agrees with the Ohio Defendants that the *Ex parte Young* exception does not apply to Plaintiff's claims, because the Ohio Defendants had no connection to the involuntary committal of Defendant. Those actions were undertaken by medical professionals. In addition,

---

[2] The *Pennhurst* decision explained that the "distinction between prospective and retroactive relief protects *Young's* underlying purpose of vindicating the supreme authority of federal law while, at the same time, preserves the States' constitutional immunity. 465 U.S. at 90. To the extent Plaintiff's suit asserts a violation of state law or the state's failure to follow its own established procedures, the *Ex parte Young* doctrine does ***not*** apply as "th[e] need to reconcile competing interests is wholly absent when a plaintiff alleges that a state official has violated state law. In such a case the entire basis for the doctrine of *Young* and *Edelman* [*v. Jordan*, 415 U.S. 651 (1974)] disappears. A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Id*.

despite Plaintiff's conclusory assertions to the contrary, he is indeed seeking retrospective relief. Plaintiff is no longer involuntarily committed, and has not alleged that he is in any danger of being recommitted. Thus, he has failed to plausibly allege a continuing violation. As aptly explained by a case from the Southern District of Ohio:

> For the *Young* exception to apply, "the state official sued [must] have 'some connection' with the enforcement of the allegedly unconstitutional Act." *Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665 n.25 (6th Cir. 1982) (quoting *Ex parte Young*, 209 U.S. at 157); *Kelley v. Metropolitan County Bd. of Educ.*, 836 F.2d 986, 990-91 (6th Cir. 1987) (declining to apply *Young* when defendants were not threatening to enforce any unconstitutional act). Courts have not read *Young* expansively. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 102, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). ("While the rule permitting suits alleging conduct contrary to 'the supreme authority of the United States' has survived, the theory of *Young* has not been provided an expansive interpretation."). Furthermore, the Sixth Circuit has expressly held that the phrase " 'some connection with the enforcement of the act' does not diminish the requirement that the official threaten and be about to commence proceedings." *Children's Healthcare is a Legal Duty, Inc.*, 92 F.3d at 1416 (citing *Ex parte Young*, 209 U.S. at 155-56).

*Brown v. Strickland*, No. 2:10-cv-166, 2010 U.S. Dist. LEXIS 63878, at *8-9, 2010 WL 2629878 (S.D. Ohio June 28, 2010). Here, there is simply no plausible allegation that Governor DeWine or Director Cornyn had any connection to Plaintiff's involuntary committal, or that they, or anyone acting under their authority are making threats of committal.

In addition, while the Court finds no past violation of federal law, even if Plaintiff could allege further allegations that there was, the Supreme Court has affirmed an appellate court's decision that found a suit seeking declaratory relief for a *past* violation of federal law was retrospective in nature and, therefore, barred. *See Green v. Mansour*, 474 U.S. 64, 67, 106 S. Ct. 423, 425 (1985).

For the foregoing reasons, the Court finds well taken the Ohio Defendants' arguments that they are immune from the claims raised by Plaintiff.

### B. Equal Protection Claim

Assuming *arguendo* that Plaintiff's Equal Protection Clause claim is not barred by sovereign immunity as discussed above, the Ohio Defendants argue that this claim should be dismissed because the Complaint fails to allege unequal treatment of similarly-situated individuals. (R. 7, PageID# 100-101). Defendants' opposition brief is unresponsive to this argument.[3] (R. 11).

The Complaint alleges that Ohio's involuntary commitment statutes violate the Equal Protection Clause because Ohio's civil procedures relating to involuntary hospitalizations of mentally ill individuals are different from criminal procedures that would allow the state to detain a non-mentally ill criminal defendant. (R. 1, PageID# 25, ¶¶222-224). "The Equal Protection Clause prohibits discrimination by the government that burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Superior Communs. v. City of Riverview*, 881 F.3d 432, 446 (6th Cir. 2018) (internal quotations omitted). The Complaint does not allege that Plaintiff was a member of a suspect class, nor has he alleged that individuals who are experiencing mental illness—illness of such severity that they potentially trigger involuntary hospitalization statutes—constitute a suspect class. Further, Plaintiff's opposition brief has not cited any authority suggesting such individuals constitute a suspect class under the law. Nor has the Complaint sufficiently identified a similarly situated class that is treated differently *without*

---

[3] Defendants' reply brief asserts that "Plaintiff appears to abandon his Equal Protection claim in his memorandum in opposition as he failed to respond to Defendant's arguments." (R. 12, PageID# 137). The Court agrees that Plaintiff made no attempt to counter the arguments raised in the Ohio Defendants' motion with respect to the failure to allege unequal treatment of similarly-situated individuals.

*any rational basis for the difference*.

The Court agrees that Plaintiff's attempted comparison of criminal defendants and mentally-ill individuals is an apples-to-oranges comparison that fails to support an equal protection claim. Mentally ill individuals facing civil commitment proceedings may be involuntarily committed, like Plaintiff, to protect themselves from self-harm. Criminal defendants are not similarly situated to individuals suffering from severe mental illness because, when considering a few obvious distinctions, the following is apparent: (1) absent evidence to the contrary, they are presumably not suffering from a severe mental illness; (2) the possibility of pretrial detention for a criminal defendant is not invoked to prevent self-harm (such as the fears Plaintiff might act on his suicidal thoughts); and (3) although pretrial detention may last until trial, many involuntary committals for mental health treatment are likely to be transitory—like Plaintiff's—until mental health symptoms stabilize. These are but a few clearly distinguishing characteristics that provide a rational basis for treating differently these two different categories of individuals.

As explained by the Supreme Court, "[t]here are significant reasons why different standards of proof are called for in civil commitment proceedings as opposed to criminal prosecutions. In a civil commitment state power is not exercised in a punitive sense… [and] a civil commitment proceeding can in no sense be equated to a criminal prosecution." *Addington v. Texas*, 441 U.S. 418, 428, 99 S. Ct. 1804, 1810 (1979). Similarly, the Ohio Supreme Court has addressed a different statute that allows for confinement, which is instructive. *State v. Williams*, 126 Ohio St.3d 65, 71 (2010). There, the Ohio Supreme Court held O.R.C. § 2945.39, which subjects a criminal defendant who remains incompetent to stand trial to involuntary hospitalization, is a civil statute, and, therefore, said individual is not afforded the constitutional

rights afforded to a defendant in a criminal prosecution.

Although the Court agrees that Plaintiff has essentially abandoned his equal protection claim, the Court also finds that the Complaint fails to allege unequal treatment of similarly situated individuals. His attempt to compare with individuals facing criminal charges, who are not in a mental health crisis, presents categorically different groups that fail to constitute similarly situated individuals. Finally, even if a criminal defendant could be construed to be sufficiently similar to those experiencing severe mental illness—which this court does not find an apt comparison—the above authority demonstrates why there *is* a rational basis for treating these groups differently. As such, dismissal of Defendant's Equal Protection Clause claim is warranted.

## IV. Conclusion

For the foregoing reasons, the Ohio Defendants' motion to dismiss (R. 7) is hereby GRANTED. This action is hereby DISMISSED with prejudice.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: February 6, 2025